UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:25-cr-27-REW-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| NATHAN STEWART, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Adam Stallsworth, a Mount Vernon City Police Officer, arrested Defendant Nathan Stewart for public intoxication. Later at the detention center, video surveillance captured Stewart discarding a small package secreted inside his pants, later determined to contain fentanyl. Now facing a federal indictment for fentanyl trafficking, Stewart moves to suppress the package and the video surveillance, arguing that Officer Stallsworth failed to advise Stewart that he was under arrest pursuant to KRS § 431.025. *See* DE 14. But the Fourth Amendment inquiry Stewart invokes turns on constitutional probable cause, not adherence to Kentucky statute. And probable cause supported Stewart's arrest for public intoxication. So, the Court **DENIES** the motion.

I.   **Background**

On the night of August 30, 2023, the Mount Vernon Police Department dispatched officer Adam Stallsworth to investigate reports of two persons stumbling along the city's main drag and nearly stepping into moving traffic. *See* DE 14-1. As Stallsworth approached, he saw the subject "nearly fall when stepping on to the sidewalk[,]" so he stopped to investigate. *See id.* That man turned out to be Defendant Nathan Stewart. Stallsworth observed Stewart struggling to maintain his balance, slurring his speech, and exhibiting pinpoint pupils. *See id.* Stallsworth, needing to

query the female, placed Stewart in his cruiser for safety reasons; that ripened into an arrest of Stewart for public intoxication. *See* DE 14-2 at 5.

Stallsworth then transported Stewart to the Rockcastle County Detention Center. *See id.* While in the booking area, Stewart "was observed with his hands in his pants and leaning against the kiosk machine[.]" *Id.* Officers heard a "rustling noise" in the area, and upon a visual search, discovered that a plastic bag had been discarded behind the kiosk, containing a powdery substance believed to be either heroin or fentanyl. *See id.* Camera footage from the booking area, reviewed after the incident, captured Stewart removing the bag from his pants and, once officers were not looking, discarding it behind the kiosk in the same place the bag was discovered. *See* DE 14-2 at 5. Officers secured the bag, logged it as evidence, and sent it to the Kentucky State Police Southeastern Laboratory for analysis. *See id.* The fentanyl is the foundation for the charge in this case.

The events led a federal grand jury to indict Stewart for aggravated possession with intent to distribute fentanyl. *See* DE 1. After pleading not guilty, *see* DE 8, Stewart filed this motion to suppress. *See* DE 14. He argues that the baggy and video footage should be suppressed because Stallsworth violated KRS § 431.025 by failing to communicate to Stewart that he was under arrest. *See id.* at 4–8. The Government responded in opposition to the motion, arguing that the arrest was lawful under the Fourth Amendment because Stallsworth had probable cause to arrest Stewart for public intoxication. *See* DE 16. Stewart replied. *See* DE 17. The matter is ripe for review.

**II.    Analysis**

The Fourth Amendment prevents the government from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. Arrests—a seizure under the Fourth Amendment—do not require a warrant when they occur in a public place. *See Graves v. Mahoning Cnty.*, 821 F.3d 772,

776 (6th Cir. 2016). They need only be "reasonable" in the eyes of the Fourth Amendment. *See id.* An arrest is constitutionally reasonable when the officer had "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2004). This is the case regardless of whether the crime supporting the arrest qualifies as a misdemeanor or a felony under the relevant law, and it matters not, for Fourth Amendment purposes, whether the alleged misdemeanor occurred in the officer's presence. *See Graves*, 821 F.3d at 778. If an officer exceeds these constraints, evidence obtained by a search or seizure that violates the Fourth Amendment is inadmissible in a state or federal criminal trial, absent some exception. *See Mapp v. Ohio*, 81 S. Ct. 1684, 1691 (1961). The admissibility bar extends to all evidence "which police derivatively obtain[ed] from an unconstitutional search or seizure." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Wong Sun v. United States*, 83 S. Ct. 407, 416 (1963)).

Stewart grounds his suppression argument on KRS § 431.025. That state statute requires a Kentucky law enforcement officer making an arrest to "inform the person about to be arrested of the intention to arrest him, and of the offense for which he is being arrested." § 431.025(1). Stewart contends that Stallsworth skirted this requirement by failing to inform Stewart that he was under arrest and for what crime. *See* DE 14 at 4–6. He surmises, then, that Stallsworth's arrest was "an unlawful detention of Stewart, and any evidence discovered as a result of his unlawful detention should be suppressed." *See id.* at 7. This is his entire theory: "Stewart asserts the simple question posed here is whether he was arrested in conformity with KRS § 431.025." *See* DE 17 at 1.

Stewart mistakes the proper inquiry. He faces federal criminal charges and proceeds in federal district court; the Fourth Amendment, not state law, governs the analysis. *See United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) ("[O]nly the Fourth Amendment (to the exclusion of state law) applies in federal prosecutions involving evidence seized by state officials. So long as

3

the Fourth Amendment is satisfied, there is no basis for suppression.") (emphasis in original); *United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994) ("[I]n federal court, [the exclusionary] rule only requires the court to exclude evidence seized in violation of the Federal Constitution. A state may impose a rule for searches and seizures that is more restrictive than the Fourth Amendment . . . . However, the state rule does not have to be applied in federal court."). And, contrary to Stewart's apparent suggestion, the Fourth Amendment does not incorporate the particularities of state constitutions or statutes in federal cases; of this, the law is certain. *See Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008) ("[W]hile States are free to regulate [] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."); *California v. Greenwood*, 108 S. Ct. 1625, 1630 (1988) ("We have never intimated . . . that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs."); *Beals*, 698 F.3d at 263 ("'[I]n determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated.'") (citing *United States v. Maholy*, 1 F.3d 718, 721 (8th Cir. 1993)).

So, to justify suppression in this federal case, Stewart must show that Stallsworth offended the Fourth Amendment, not Kentucky law. And while Kentucky may grant criminal defendants greater protections than the Fourth Amendment in the search and seizure context, such protections, be them constitutional or statutory, do not make the climb into federal court. *See Wright*, 16 F.3d at 1434 ("The fact that [Kentucky] law 'may now require greater protection against searches and seizures than the [fourth] amendment is of no avail to a defendant in federal court, under

4

prosecution for a federal crime.'").[1] As such, Kentucky law is of no matter as it pertains to suppression.[2]

Notably, even in the courts of the Commonwealth, Stewart likely would have no likely remedy under his theory. The Kentucky Supreme Court has at least twice indicated that violations of § 431.025 do not require suppression of an otherwise lawful search or seizure. *See Baker v. Commonwealth*, 860 S.W.2d 760, 762 (Ky. 1993) (finding that § 431.025 noncompliance was not a basis for suppression of evidence obtained by an otherwise constitutional search); *Little v. Commonwealth*, 438 S.W.2d 527, 529 (Ky. 1968) ("Appellants cite no case holding that the failure to inform of the reason for the arrest is a basis for excluding evidence concerning the arrest and we know of none. In the absence of authority we are not persuaded by their argument."). Stewart offers nothing to suggest the contrary. The Court sees no merit in the statutory gambit.

---

[1] This result follows logically from our federalist structure. The Fourth Amendment casts a broad net, protecting individuals against unreasonable governmental intrusion from sea to shining sea. And "[w]hile the states are free to impose rules for searches and seizures that are more restrictive than the Fourth Amendment, those rules will not be enforced in a federal criminal proceeding." *Beals*, 698 F.3d at 263. Any contrary rule would swallow the Fourth Amendment's general applicability, subjecting its protections to the varying currents of individual state law. *See Moore*, 128 S. Ct. at 1607 ("[L]inking Fourth Amendment protections to state law would cause them to 'vary from place to place and from time to time[.]'") (citing *Wren v. United States*, 116 S. Ct. 1769, 1771 (1996)). What suits Kentucky may not do the same for Maine or Alaska, and the Fourth Amendment leaves room for states to account for those differences in their legal regimes without upending the balance of generally applicable protections enshrined in the Federal Constitution. *See Moore*, 128 S. Ct. at 1608 ("[I]t is not the province of the Fourth Amendment to enforce state law."); *see also* Jeffery S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 17 (2018) ("State constitutional law respects and honors [] differences between and among the states by allowing interpretations of the fifty state constitutions to account for [] differences in culture, geography, and history.").

[2] Stewart repeatedly asserts that his arrest was "unlawful" because of Stallsworth's purported failure to respect § 431.025. *See* DE 14 at 4; DE 17 at 4. But as the Supreme Court has conclusively explained, the term "unlawful," as used in Fourth Amendment cases, considers lawfulness in reference to the Federal Constitution, not state law. *See Moore*, 128 S. Ct. at 1607 ("[S]everal important state-court decisions have defined the lawfulness of arrest in terms of compliance with state law. But it is not surprising that States have used 'lawful' as shorthand for compliance with state law, while our constitutional decision in *Robinson* used 'lawful' as shorthand for compliance with constitutional constraints.") (internal citations omitted). Stewart thus asks and answers the wrong question.

With Stewart's § 431.025 argument foreclosed, the Court turns to the proper Fourth Amendment inquiry. To lawfully arrest Stewart, Stallsworth must have had probable cause to believe that Stewart violated state public intoxication laws—the violation serving as the basis for Stewart's arrest. *See* DE 14-1 at 1. An officer has probable cause to arrest a suspect where "the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Diamond v. Howd*, 288 F.3d 932, 937 (6th Cir. 2002) (alterations omitted) (citing *Beck v. Ohio*, 85 S. Ct. 223, 225 (1964)); *see also Wright*, 16 F.3d at 1438 ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (internal quotations omitted). The Government argues, albeit after entirely ignoring Stewart's § 431.025 argument, that Stewart's conduct and physical state provided probable cause to arrest him for public intoxication. *See* DE 16 at 5–7. Stewart, again, makes no contest of probable cause, focusing solely on "whether [Stewart] was arrested in conformity with KRS § 431.025." DE 17 at 1. The Government, relying on and supporting the proper standard, has the better argument.

Probable cause supported Stewart's arrest. KRS § 525.100 makes it a misdemeanor to "appear[] in a public place manifestly under the influence of a controlled substance, . . . excluding alcohol, . . . to a degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." *See id.* At the time of arrest, Stewart easily checked those boxes. Stallsworth was dispatched for complaints of a person stumbling into oncoming traffic on the city's main street. *See* DE 14-1 at 1; DE 14-2 at 5. That conduct, which proved to be accurate upon Stallsworth's arrival, satisfied § 525.100's public place and potential endangerment requirements. Stewart faults Stallsworth for placing him in the cruiser without communicating that he was under

6

arrest. *See* DE 14 at 6. But given that endangerment of the intoxicated subject is an element of § 525.100, Stallworth's safety-based response fully squares with probable cause. Stallsworth's examination of Stewart also strongly supported that he was under the influence of an intoxicant. He observed Stewart struggling to maintain balance, exhibiting slurred speech, and with pinpoint pupils—all clear signs of impairment. *See* DE 14-1 at 1; Cleveland Clinic, *Intoxication*, https://my.clevelandclinic.org/health/diseases/intoxication (last updated Nov. 4, 2024) (noting balance issues, constricted pupils, and slurred speech as symptoms of intoxication). Those clear and consistent markers amount to probable cause.

Stallsworth did not clearly segregate the intoxication source, a controlled substance versus alcohol. Perhaps the pupils told the story, but no matter. KRS § 222.202 provides the same authority for an alcohol-related arrest. *See* § 222.202 ("A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity."). Stewart presented in public as impaired from a substance and presenting danger to himself; Stallsworth's probable cause calculus was reasonable and thus sound, eliminating any need to further analyze suppression.[3]

### III. Conclusion

The Fourth Amendment, not Kentucky statute, controls the suppression analysis. And Officer Stallsworth had probable cause to arrest Stewart. Suppression, necessarily premised on the claimed constitutional invalidity of arrest, fails. The Court **DENIES** DE 14.

This the 28th day of May, 2025.



Signed By:
*Robert E. Wier* REW
United States District Judge

---

[3] The Court won't grapple with the oddity of Stewart denying arrest but claiming the right to suppress fruits from an unlawful arrest.